UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

REJUJIO PALACIO,

       Plaintiff,

v.                                                          Case No. 2:03-cv-201
                                                            HON. ROBERT HOLMES BELL
JERRY HOFBAUER, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Rejujio Palacio, an inmate at the Marquette Branch Prison (MBP), filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 against defendants Warden Jerry Hofbauer, Deputy Warden Robert Napel, Grievance Coordinator Casey Tallio, Registered Nurse Scott Ewers, and Resident Unit Manager (RUM) Pamela Lajewski-Pearson.

Plaintiff alleges that he was transferred to MBP in May of 2002. Plaintiff states that he is a nonsmoker and is allergic to the components of tobacco smoke. Plaintiff contends that he suffers from severe symptoms such as bronchitis, constant cough which is productive of a mucous phlegm, chills, rashes, fever, shortness of breath, and chest pains, which are exacerbated when he is exposed to tobacco smoke.  Since his arrival at MBP, Plaintiff has been placed in housing units which are designated as "nonsmoking."  The housing units at MBP have cell blocks with open bars, which face an open gallery.  Ventilation to and from the units is very poor.  Plaintiff claims that notwithstanding the nonsmoking designation, most residents in the housing units continue to smoke. Tobacco is not deemed contraband at MBP, because residents are allowed to smoke outside the housing units.

Plaintiff alleges that defendants Hofbauer, Pearson, Napel, and Tallio are aware of the continued smoking in the housing units, as well as the fact that misconduct tickets are rarely issued for smoking.  Plaintiff states that these defendants have failed to take appropriate corrective action to prevent nonsmoking prisoners from being exposed to ETS.  Beginning in January of 2003, Plaintiff filed grievances and was part of a petition addressed to defendant Hofbauer requesting the establishment of a true nonsmoking unit at MBP.

This case was initially dismissed for failure to state a claim upon which relief may be granted.  The Sixth Circuit reversed the dismissal, in part, concluding that plaintiff did state a claim regarding exposure to ETS.  The Sixth Circuit stated:

> The district court improperly held that Palacio failed to state an Eighth Amendment claim regarding ETS exposure.  Palacio substantiated his claim that he has bronchitis, a medical condition that is exacerbated by ETS.  Thus, he has stated a claim that he has a medical need for a smoke-free environment.  Palacio alleges that the nonsmoking policy is rarely enforced in the housing units, and he has supplied affidavits from other prisoners who are bothered by smoke as well as one affidavit from a prisoner who smokes in the housing block.  Prison authorities have responded to Palacio's grievances, petition, and complaint by simply citing the nonsmoking policy and apparently taking no further action.  Palacio has stated a claim that the prison officials knew of the risk to his health, and failed to take reasonable measures to abate it.

Docket #14 at 3.

Presently before the Court is Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56.  Plaintiff has filed a response and the matter is ready for decision.  Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must

demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff contends that defendants' failure to prevent smoking in the housing unit violates his rights under the Eighth Amendment. In order to set forth an Eighth Amendment claim based on exposure to environment tobacco smoke (ETS), plaintiff must demonstrate that he was exposed to unreasonably high levels of ETS, that there is more than a statistical probability that he will be injured by ETS, and that involuntary exposure to ETS violates contemporary standards of decency. *See Helling v. McKinney*, 509 U.S. 25, 35-36, 113 S. Ct. 2475, 2482 (1993). Plaintiff must establish that he has a serious need for a smoke-free environment, *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992), or that the ETS levels in the prison create an unreasonable risk of serious damage to his future health. *Helling,* at 35. In addition, plaintiff must also demonstrate that his

- 3 -

exposure to ETS was the result of deliberate indifference on the part of defendants. *Helling*, 509 U.S. at 36-37, 113 S. Ct. at 2482. Specifically, plaintiff must show that defendants "actually knew that [plaintiff's] exposure to ETS created a substantial risk of harm and that [defendants] deliberately disregarded that risk by failing to take reasonable measures to abate it." *Montague v. Campbell*, No. 97-5760, 1998 WL 246345, **1 (6th Cir. 1998).

Plaintiff was confined at MBP between July 2002 and November 2003. Plaintiff has presented no evidence which could establish that he was being subjected to ETS levels that create an unreasonable risk to his future health. Plaintiff has submitted some evidence establishing that prisoners continue to smoke in their cells despite the no smoking policy inside the facility. Further, plaintiff claims that the ventilation in the prison is so poor that the smoke stays inside the unit. Defendant Lajewski-Pearson submitted an affidavit stating that as a Resident Unit Manager she has supervised the B-unit. Defendant Lajewski-Pearson has stated that she has not observed smoke or smelled ETS in the unit. Further, defendant Lajewski-Pearson stated misconduct tickets are written for smoking violations inside the housing units. Plaintiff was housed in a number of different cells in the unit while he was at MBP. Between September 14, 2002, and January 16, 2003, plaintiff was housed in a cell in the middle of the gallery. At other times, plaintiff was housed in a cell at the end of the gallery. Defendant Hofbauer has stated that the ventilation system inspections have been performed annually in B-block at MBP. In 2002, the ventilation requirements of 10 cubic feet per minute were exceeded when the ventilation system was measured at 27 cubic feet per minute. In 2003, the system measured 21 cubic feet per minute.

Similarly, plaintiff's claims that he has suffered medical problems due to ETS is not supported in the record. Plaintiff's medical records establish that plaintiff is not suffering medical problems due to ETS exposure. In July 2002, plaintiff was taken to the Marquette General Health

System emergency department due to left flank pain not controlled by Vicodin.  Examination revealed that plaintiff had normal breathing, chest and lungs.  The record does not indicate any problems associated with ETS or that plaintiff's bout with bronchitis during the winter was caused by ETS.  On two occasions in February 2003, plaintiff visited health care with complaints of sinus problems, cough or headaches.  In each instance, there were no unusual findings made by medical staff.  Plaintiff has never received any doctor's order for placement in an ETS free environment.  Moreover, defendants have presented evidence that establishes that on 32 occasions plaintiff purchased tobacco products from the prison store.  Plaintiff simply cannot support his claim that he had a medical need for a smoke-free environment while housed at MBP.  Plaintiff has presented no evidence of a medical need or that he suffered any ill effects from ETS exposure.  There exists no medical record from a health care worker requiring plaintiff's placement in a completely smoke-free housing environment.  Similarly, plaintiff has failed to show that defendants acted with deliberate indifference.  While it is true that plaintiff has asserted that he made complaints about ETS levels in the housing unit to defendants, plaintiff has not established that defendants acted with deliberate indifference to a serious medical need to be placed in a smoke-free environment.

Accordingly, it is recommended that defendants be dismissed under the defense of qualified immunity.  Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used to determine whether the official could reasonably have

believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

"The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

- 6 -

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40.  *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful.  *Anderson*, 483 U.S. at 639-40.  Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights.  *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983.  Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty.  *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten).  *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422

- 7 -

(6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). Thus, where the underlying claim is one in which a certain motive or intent is an element, and plaintiff has made allegations which, if proven, will establish the existence of the necessary state-of-mind, a factual issue exists, preventing dismissal pursuant to Rules 12(b)(6) or 56. *See Sanchez v. Sanchez*, 777 F. Supp. 906 (D.N.M. 1991). In the Sixth Circuit, plaintiff need not include such allegations in his complaint, since in preparing his Complaint, he has no duty to anticipate affirmative defenses. *Dominique v. Telb*, 831 F.2d 673, 676 (1987). However, once the affirmative defense is raised, plaintiff must come forward with such additional facts as would establish the requisite state of mind). *Id.*

> Accordingly, when a plaintiff pleads his claim in generalized "notice" form, and the defense of qualified immunity is asserted through a motion to dismiss, the plaintiff is required to respond to that defense. If his original complaint is deficient in that regard, he must amend his complaint to include the specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity. For example, if the original complaint alleged that a police officer "used excessive force," and qualified immunity is asserted, then plaintiff

- 8 -

would be required to amend with allegations of evidence sufficient to demonstrate that the force used against him was, indeed, unreasonable. It is in this sense that a heightened standard attaches to plaintiff's pleading.

*Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995).

In the opinion of the undersigned, when the issue is raised prior to the completion of discovery, the plaintiff must simply respond with specific allegations of fact adequate to survive scrutiny under Rule 12(b)(6) standards. However, when the issue of motive is raised in the context of a motion for summary judgment following an adequate period of discovery, the amount of proof required is that quantum of evidence necessary to allow a jury to return a verdict in plaintiff's favor. *Crutcher v. Commonwealth of Kentucky*, 883 F.2d 502, 504 (6th Cir. 1989); *Hull v. Cuyahoga Valley Joint Vocational School District Bd. of Education*, 926 F.2d 505 (6th Cir.), *cert. denied sub nom.*, *Hull v. Shuck*, 501 U.S. 1261 (1991). *Cf. Poe v. Haydon*, 853 F.2d 418, 424 (6th Cir. 1988), *cert. denied*, 488 U.S. 1007 (1989) (to avert dismissal short of trial, plaintiff must come forward with something more than inferential or circumstantial support for his allegation of unconstitutional motive). A plaintiff will defeat a defense of qualified immunity if he can present sufficient evidence to prove the existence of a genuine issue of material fact regarding the issue of immunity or if the undisputed facts which show that defendant violated plaintiff's clearly established rights. *Noble*, 87 F.3d at 161.

When ruling on qualified immunity, this court must expressly identify the right at issue and summarize the factual or evidentiary basis for its conclusion. *Noble*, 87 F.3d at 161; *Wegener*, 933 F.2d at 392. In determining whether a clearly established right exists, the district court looks first to the binding precedent of the Supreme Court, then to that of the Sixth Circuit, and then finally to decisions of other jurisdictions. *Wegener*, 933 F.2d at 392; *Masters v. Crouch*, 872 F.2d

1248, 1251-52 (6th Cir.), *cert. denied sub nom*, *Frey v. Masters*, 493 U.S. 977 (1989); *Poe v. Haydon*, 853 F.2d 418 (6th Cir. 1988), *cert. denied*, 488 U.S. 1007 (1989); *Ohio Civil Service Employees Assn. v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988). Public officials are expected to be aware of clearly established law specifically governing their conduct. *Long v. Norris*, 929 F.2d 1111, 1115 (6th Cir.), *cert. denied sub nom*, *Jones v. Long*, 502 U.S. 863 (1991).

   The United States Supreme Court found that prison officials can be on notice that their conduct violates established law even in novel factual circumstances. *Hope v. Pelzer*, 536 U.S. 730 ( 2002). In *Hope*, Alabama prison guards were not entitled to qualified immunity from inmate's claim that he was subjected to cruel and unusual punishment when he was handcuffed to a hitching post for a period of seven hours, in a non-emergency situation. *Id.* The Court noted that prison officials knowingly subjected the inmate to a substantial risk of physical harm, unnecessary pain caused by the handcuffs and the restricted position, unnecessary exposure to the heat of the sun, prolonged thirst and taunting, and to a deprivation of bathroom breaks. *Id.* The Court held that binding Eleventh Circuit precedent, an Alabama Department of Corrections regulation, and a Department of Justice report all informed prison officials of the constitutional infirmity in its use of a hitching post. *Id.*

   While defendants bear the initial burden of presenting facts that, if true, would entitle them to immunity, the ultimate burden of proof falls on the plaintiff to show that the defendants violated a right so clearly established that any official in defendants' positions would have clearly understood that he was under an affirmative duty to refrain from such conduct. *Noble*, 87 F.3d at 161; *Wegener*, 933 F.2d at 392. Plaintiff has not shown that he has a need to be placed in a smoke-free environment or that he was subjected to an unreasonable amount of ETS. Moreover, plaintiff has failed to show that defendants without knowledge of a medical need or medical order for a

- 10 -

smoke free environment acted with deliberate indifference in failing to transfer plaintiff to a smoke-free environment.

Accordingly, it is recommended that defendants' Motion for Summary Judgment (Docket #31) be granted and that this case be dismissed in its entirety.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he should be required to pay the $255 appellate filing fee in one lump sum.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  February 8, 2006